# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARCIA LETT, o/b/o )
T.L., as next friend, )
      )
     Plaintiff, )
      )
     vs. )    **Case number 4:09cv1944 TCM**
      )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
      )
     Defendant. )

## MEMORANDUM AND ORDER

This 42 U.S.C. § 405(g) action for judicial review of the final decision of Michael J.

Astrue, the Commissioner of Social Security (the Commissioner), denying the application

for supplemental security income benefits (SSI) under Title XVI of the Social Security Act,

42 U.S.C. § 1381-1383b, filed on behalf of T.L. (Plaintiff) by his mother, Marcia Lett, is

before the undersigned for a final disposition pursuant to 28 U.S.C. § 636(c).  Plaintiff has

filed a brief in support of his complaint; the Commissioner has filed a brief in support of his

answer.

## Procedural History

Ms. Lett applied for SSI on Plaintiff's behalf in August 2006,[1] alleging he was

disabled as of the first of that month due to attention deficit hyperactivity disorder (ADHD),

---

[1] Prior applications had been denied in May 2000, March 2004, August 2005; the applications had not been pursued after the initial denials.

bedwetting, and asthma. (R.[2] at 61-63.) This application was denied initially and following an administrative hearing in September 2007 before Administrative Law Judge (ALJ) Randolph E. Schum. (Id. at 17-41.) The Appeals Council denied review, effectively adopting the ALJ's decision as the final decision of the Commissioner. (Id. at 1-3.)

## Testimony Before the ALJ

Ms. Lett, represented by counsel, testified at the administrative hearing. Plaintiff was present but did not testify.

Ms. Lett testified that she was then twenty-three years old her son and lives with her two children, the oldest of which, Plaintiff, is ten years old and the other is one year old. (Id. at 27.) She is single. (Id.) She works as a home health aide and is currently helping a client with diabetes and high blood pressure with her cleaning, cooking, and laundry. (Id. at 27-28.) She finished the ninth grade. (Id. at 28.)

She testified that Plaintiff has a short attention span, does not follow oral directions, and is extremely "hyper." (Id. at 29.) He does not pay attention at school and quickly loses his temper. (Id.) She has had to take him out of school because of his temper. (Id.) If he does not get his way, is required to do something around the house, or does not agree with her, he goes into a rage and looks like is going to fight. (Id. at 29-30.) Plaintiff also has a problem with wetting the bed; his medication for the problem has recently been changed to Desmopressin. (Id. at 30.) He has been wetting the bed since he was four years old. (Id.)

---

[2]References to "R." are to the administrative record electronically filed by the Commissioner with his answer.

Plaintiff also takes Concerta for his ADHD, which he was diagnosed with when he was six or seven.  (Id. at 30-31.)

She just received his first progress report of the new school year.  (Id. at 31.)  He is not doing well and has been placed in a reading program to get extra help.  (Id.)  Although he is the fourth grade, he is reading at the second grade level.  (Id. at 32.)  His spelling has improved a little, although he is not where he should be for his age and grade.  (Id. at 33.)  His math has improved a lot.  (Id.)  He is not  motivated and does not stay focused or quiet.  (Id. at 32.)  He interrupts other children, throws things, and keeps the teacher from teaching.  (Id.)  He has been this way as long as she can remember.  (Id.)

Plaintiff wears glasses; his left eye is weaker than his right.  (Id. at 33.)  His vision has not been checked in over a year.  (Id.)

Plaintiff was diagnosed with asthma the year before.  (Id. at 33-34.)

He has been suspended from school twice:  once for punching a girl and once for throwing something at the bus driver.  (Id. at 34.)

**Medical, School, and Other Records Before the ALJ**

The records before the ALJ included reports Ms. Esters completed as part of the application process, school records, and medical records.

When applying for SSI for her son, Ms. Lett completed a Disability Report.  (Id. at 78-84.)  She did not know his height, but he weighed 70 pounds.  (Id. at 78.)  He became disabled on August 1, 2006.  (Id. at 79.)  He was in the third grade and was not in any special education classes.  (Id. at 82-83.)

- 3 -

On a Function Report form for children ages six to twelve, Ms. Lett reported that Plaintiff wore glasses, but did not have any problems hearing. (Id. at 64-65.) He did have problems talking clearly, but could be understood some of the time. (Id. at 66.) He had problems repeating stories he had heard, explaining why he did something, and talking with friends and family. (Id. at 67.) He did not have a problem delivering telephone messages, telling jokes or riddles accurately, and using sentences with "because," "what if," or "should have been." (Id.) His ability to progress in learning was limited in that he could not read simple words, read and understand simple sentences, read and understand stories in books or magazines, write longhand, write a simple story with six or seven sentences, add and subtract numbers over ten, or tell time. (Id. at 68.) He could read capital and small letters, print some letters and his name, and spell most three to four letter words. (Id.) Also, he knew the days of the week and the months of the year and could make correct change. (Id.) His impairments affected his ability to make friends his own age, make new friends, and play team sports. (Id. at 70.) They did not affect his ability to get along with his mother, other adults, or teachers. (Id.) His impairments also affected his ability to button his clothes, take a bath or shower without help, wash his hair, do what he is told most of the time, obey safety rules, and criticism or correction. (Id. at 71.) His ability to pay attention and stick with a task was limited in that he did not keep busy on his own, finish things he started, complete his homework, or complete his chores most of the time. (Id. at 72.)

After the initial denial of Plaintiff's application, Ms. Lett completed a Disability Report – Appeal form. (Id. at 94-99.) She did not think his medications were working; his

behavior was worse.  (Id. at 95.)  The change occurred on October 3, 2006.  (Id.)  Plaintiff's behavior kept him from learning and getting work done.  (Id.)

Plaintiff's school records before the ALJ are from four school years.

Mrs. Candice, identified only as "lead teacher" without reference to school or grade, wrote on March 4, 2002, that Plaintiff was progressing well in class but was unable to sit still for story-time or group activities, had difficulty maintaining focus on work, and had a "very short attention span."  (Id. at 115.)  Although he was easily redirected, he could not stay on task.  (Id.)

An undated progress report from Lucas Crossing Elementary Complex when Plaintiff was in the first grade lists Ds in reading and language, an F in spelling, Cs in handwriting and math, and needs improvement in science, social studies, and health.  (Id. at 104.)  The teacher noted that Plaintiff was "really struggling academically" and requested a meeting with Ms. Lett.  (Id.)  His first semester grades for that year were Fs in reading and spelling, a D in handwriting, and Cs in language and mathematics.  (Id. at 105.)  He continued to be rated a as "needs improvement" in social studies, science, and health.  (Id.)  His teacher asked Ms. Lett to help him with reading, spelling, and handwriting.  (Id.)  She noted that he laughed at inappropriate times.[3]  (Id.)  His behavior had improved, however, and she asked that Ms. Lett encourage him to stay focused and try harder.  (Id.)

---

[3]This comment was repeated from the first quarter.  (Id. at 105.)

Also when Plaintiff was in the first grade, he was given a detention during lunch on January 23, 2004, for throwing things in the classroom, bothering and hitting other students, and not stopping when repeatedly told to.  (Id. at 113.)

Plaintiff continued to get Cs, Ds, and Fs in the second grade.  (Id. at 107-10.)  At the end of the first semester, he had an F in reading, Ds in spelling, language, mathematics, and social studies, and Cs in handwriting, science, and health.  (Id. at 107.)  It was noted for all subjects that an increased effort would result in improved performance.  (Id.)  At the end of the year, the Ds in spelling, language, and mathematics had changed to Fs.  (Id. at 110.)  His teacher commented that he would benefit from repeating the second grade because he had not mastered those skills required to move on to third grade.  (Id.)

Plaintiff's third grade teacher, Mrs. Patti Cloud, issued him a "Classroom Behavior Report" on December 7, 2006, for misbehaving in the library.[4]  (Id. at 111.)  He was not allowed recess that day and was warned that he would not be permitted to attend the class party if his behavior did not improve.  (Id.)

On February 20, 2007, Mrs. Cloud gave Plaintiff an academic progress report.[5]  (Id. at 103.)  She marked that he needed improvement in math, reading, attendance, test scores, attention (he goofed off), and class participation.  (Id.)  Her recommendations included that he complete assignments carefully and pay attention during class.  (Id.)  They did not include

---

[4]The records indicate that Plaintiff was in second grade in the 2004/2005 school year and in the third grade, at a different school, for the 2006/2007 school year.  There is no indication whether he repeated the second grade in 2005/2006.

[5]Plaintiff also submitted this report to the Appeals Council.  (See id. at 16.)

that he pay attention to direction or cooperate with others.  (Id.)  She noted that his math average had gone down because he did not ask questions in class and did not know his multiplication and division tables.  (Id.)  She asked that he receive help at home with this and with reading aloud.  (Id.)

Mrs. Cloud wrote "To Whom It May Concern" on February 28:

[Plaintiff] is impulsive and quite active during class.  [Plaintiff] is always playing with some part of his clothing; flapping his hands while we are sitting for a story or constantly moving about in his chair on the floor.  He likes to irritate other classmates by "play" punching at them, bothering them in the bathroom or bothering them in line.

[Plaintiff] is a very sweet child and he does not like to be in trouble.  He is [sic] an average ability in academics although he does struggle with some math skills and his reading skills.

(Id. at 101.)

That same day, she issued Plaintiff a Classroom Behavior Report for arguing with another boy when working in a group.  (Id. at 102.)  Two days later, she gave him another report for telling a boy to move away and to another school when that boy told Plaintiff to stop making noise.  (Id.)

Plaintiff's medical records before the ALJ begin with a two-paragraph letter by Jerry J. Bosse, Ph.D., diagnosing Plaintiff with ADHD in December 2003.  (Id. at 207.)

The next record is dated April 8, 2005.  Plaintiff then saw the pediatrician at the John C. Murphy Health Center at the St. Louis County Department of Health (Health Center) following a report by his teacher the day before that he was blurting out things in class, making inappropriate noises, being disruptive, not staying seated, throwing things, and

playing in line.  (Id. at 122, 131-33.)  He had been out of Concerta for a few months; Ms. Lett had decided to see how he did off the medication.  (Id. at 122.)  Off the medication, his behavior worsened.  (Id.)  He had an individualized education plan[6] (IEP) and was in resource class for reading and writing.  (Id.)  Although he had not been diagnosed with a learning disability, his teacher reported that it took him longer to catch on and he seemed "a little slow."  (Id.)  He was still wetting his bed every night.  (Id.)  He had done better on the medication; however, he had been out of the medication for "many months."  (Id.)  He was to resume taking the medication that day.  (Id. at 133.)

When Plaintiff saw the pediatrician on May 6, it was noted that his behavior had improved slightly on the Concerta but he was still having problems hitting, being aggressive, being angry, threatening his mother with his fists, and hitting at school.  (Id. at 119-21, 129-30.)  He had a poor attitude.  (Id. at 121.)  The pediatrician suspected he had oppositional defiant disorder and needed a psychiatric evaluation.  (Id. at 120.)  He was still bedwetting at night; there had been no change with the medication.  (Id. at 121.)  He was referred to urology.  (Id. at 119.)  It was noted that he had seen the psychiatrist once and his dosage of Concerta had been increased to 36 milligrams.  (Id.)  He was to return to the psychiatrist. (Id.)

---

[6]A request to the Special School District for records was returned because there was no evaluation or attendance records for Plaintiff.  (Id. at 149.)

On June 29, Plaintiff was seen by Narsimna Muddasani, M.D., at St. Alexius Hospital.  (Id. at 143-44.)  The diagnosis was ADHD; the medication was 36 milligrams of Concerta.  (Id.)

Plaintiff was seen at the Health Center on February 1, 2006, for a well-child visit.  (Id. at 126-28.)  It was again noted that Plaintiff had seen a psychiatrist only once and had not gone back.  (Id. at 128.)  He was to begin again.  (Id.)  There was no reference to bedwetting. (Id. at 126-28.)

Plaintiff returned to Dr. Muddasani on February 22, April 19, June 19, August 16, and September 17.  (Id. at 145-47.)  He was described at the second visit as doing well.  (Id. at 145.)  His medication continued to be 36 milligrams of Concerta.  (Id. at 145.)  Risperol was additionally prescribed.  (Id.)  It was noted at the August visit that he was "'doing o.k.'"  (Id. at 146.)  He was sleeping "fairly well," but had a lot of anger, had difficulty concentrating and following verbal instructions, and cried easily.  (Id.)  He was compliant with his medication.  (Id.)

Plaintiff next saw Dr. Muddasani on January 31, 2007.  (Id. at 205.)  It was noted that he had had a temper flare-up.  (Id.)  His only ADHD medication was Concerta.  (Id.)

Plaintiff was seen at the DePaul Health Center emergency room in February and was diagnosed with asthma.  (Id. at 201-03.)

The ALJ also had before him questionnaires completed by five educators who had Plaintiff before them at the beginning of the 2006/ 2007 school year.[7]

Mrs. Cloud completed a Teacher Questionnaire in September 2006. (Id. at 154, 157-63.) She saw Plaintiff for seven hours each school day. (Id. at 157.) She reported that Plaintiff was not receiving any special education services, and was average in mathematics and written language. (Id. at 157.) He did not have an unusual degree of absenteeism. (Id.) He did not have any problems in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself. (Id. at 158-62.) She described Plaintiff as a seemingly average student who completed class and home assignments and had friends. (Id. at 163.) He spoke softly and often had his hand over his mouth. (Id.)

The same day, his art teacher, who saw Plaintiff one hour a week,[8] completed the same questionnaire. (Id. at 164-70.) She reported that he had an obvious problem in six of the ten activities listed for the domain of acquiring and using information,[9] a serious problem

---

[7]A Speech/Language questionnaire was returned by a counselor for the Ritenour School District because Plaintiff did not receive any services from the Special School District, see note 5, above, and his reading score placed him within third grade expectations. (Id. at 153.) The counselor noted that his attendance was a concern during the last, 2005/2006 school year and during the current, 2006/2007 year. (Id.)

[8]The teacher reported that she had known Plaintiff since the previous year, i.e., September 2005.

[9]The six activities are comprehending and/or following oral instructions, understanding school and content vocabulary, reading and comprehending written material, providing organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (Id. at 165.)

in two of the activities,[10] and a very serious problem in one activity, understanding and participating in class discussions. (Id. at 165.) She did not rate whether he had a problem in the activity of comprehending and doing math problems. (Id.) In the domain of attending and completing tasks, the teacher rated Plaintiff as having a very serious problem every week in all but three of the thirteen activities listed.[11] (Id. at 166.) He had a serious problem in the activity of focusing long enough to finish assigned activity or task and an obvious problem in the activity of organizing own things or school materials. (Id.) She did not rate his ability to sustain attention during play/sports activities. (Id.) In the domain of interacting and relating to others, the teacher rated Plaintiff as having an obvious problem in one activity, that of relating experiences and telling stories, a serious problem in seven of the remaining twelve activities,[12] and a very serious problem in five activities.[13] (Id. at 167.) She had to change Plaintiff's seat to one next to her. (Id.) He also had problems in the domain

---

[10] The two activities are expressing ideas in written form and learning new material. (Id. at 165.)

[11] The ten activities are paying attention when spoken to directly, refocusing to task when necessary, carrying out single-step instructions, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being directed, completing class/homework assignments, completing work accurately without careless mistakes, working without distracting self or others, and working at reasonable pace/finishing on time. (Id. at 166.)

[12] The seven activities are playing cooperatively with other children, making and keeping friends, asking permission appropriately, following rules, respecting/obeying adults in authority, using language appropriate to the situation and listener, and introducing and maintaining relevant and appropriate topis of conversation. (Id. at 167.)

[13] The five activities are seeking attention appropriately; expressing anger appropriately; taking turns in a conversation; interpreting meaning of facial expression, body language, hints, sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (Id. at 167.)

of moving about and manipulating objects, specifically he had a serious problem in each of the seven activities.  (Id. at 168.)  In the domain of caring for himself, she rated him has having a serious problem in six of the ten activities,[14] an obvious problem in one activity,[15] and a slight problem in two activities.[16]  (Id. at 169.)  She did not rate his ability to cooperate in, or be responsible for, taking needed medications.  (Id.)  She also did not, as requested, assess the frequency of each problem.  (Id.)

The school librarian, who saw Plaintiff for 50 minutes each week in the library and 30 minutes each day during lunch, completed the same questionnaire the following month.  (Id. at 171-76.)  As did his classroom teacher, she assessed him as having no problem in each of the domains.  (Id. at 172-76.)

Plaintiff's physical education teacher saw Plaintiff for 100 minutes each week.  (Id. at 177.)  She reported on the questionnaire that he had no problem in the domains of acquiring and using information and moving about and manipulating objects.  (Id. at 178, 181.)  In the domain of attending and completing tasks, he had a slight problem in five of the thirteen activities:  waiting to take turns, changing from one activity to another without being disruptive, completing work accurately without careless mistakes, working without

---

[14]The six activities are handling frustration appropriately, being patient when necessary, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment.  (Id. at 169.)

[15]The one activity is knowing when to ask for help.  (Id. at 169.)

[16]The two activities are taking care of personal hygiene and caring for physical needs.  (Id. at 169.)

distracting self or others, and working at reasonable pace/finishing on time. (<u>Id.</u> at 179.) He had no problem in the remaining eight activities. (<u>Id.</u>) Plaintiff also had a slight problem in four of the thirteen activities listed for the domain of interacting and relating with others. (<u>Id.</u> at 180.) Those four are playing cooperatively with other children, seeking attention appropriately, following rules, and respecting/obeying adults in authority. (<u>Id.</u>) He had no problem in the other nine activities, nor was it necessary to implement any behavior modification strategies. (<u>Id.</u>) Plaintiff had a slight problem in four of the ten activities listed for the domain of caring for himself. (<u>Id.</u> at 182.) Those four are handling frustration appropriately, being patient when necessary, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. (<u>Id.</u>) The other six activities were not a problem. (<u>Id.</u>)

As did Plaintiff's art teacher, his music teacher had taught Plaintiff since September 2001, seeing him twice a week. (<u>Id.</u> at 184.) She found he had no problem in the domains of acquiring and using information, moving about and manipulating objects, and caring for himself. (<u>Id.</u> at 185, 188, 189.) In the domain of attending and completing tasks he had at worst a slight problem in six of the thirteen activities. (<u>Id.</u> at 186.) In the domain of interacting and relating with others, Plaintiff's worst problem was a slight one in two of the thirteen activities. (<u>Id.</u> at 187.) The teacher noted that it had not been necessary for her to implement any behavior modification strategies since Plaintiff started his medication that year. (<u>Id.</u>) She further noted that he had "made dramatic improvement in his attitude and behavior [that] year. . . . He is a different student from last year." (<u>Id.</u> at 190.)

A Childhood Disability Evaluation Form was completed for Plaintiff in October 2006 by a non-examining consultant. (Id. at 194-99.) His only impairment was ADHD. (Id. at 194.) This impairment did not result in any limitation in any of the six domains. (Id. at 196.) The consultant concluded that the ADHD was not severe. (Id. at 198.)

## The ALJ's Decision

After noting that Plaintiff, nine-years old when the SSI application was filed, was not engaged in substantial gainful activity, the ALJ concluded that he had severe impairments of ADHD, bedwetting, and asthma. (Id. at 20-21.) These conditions did not, singly or in combination, meet or medically equal an impairment of listing-level severity. (Id. at 21.)

Addressing Plaintiff's ability to function in the six relevant domains, the ALJ found that Plaintiff's ability to acquire and use information was not markedly[17] or extremely limited. (Id.) His mother's testimony that he was not doing well in school and was in a reading program because he was reading two grades below his current one was not persuasive given that the Special School District reported he was not in special education classes and his third grade teacher's report that he did not have a problem in this domain. (Id.) Also, although his mother testified that Plaintiff was having academic problems and that she had recently received a progress report from his school, no such report was in the record. (Id.)

---

[17]A child has a "marked" limitation in a domain when his impairment seriously interferes with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A marked limitation is "a limitation that is 'more than moderate' but 'less than extreme.'" Id.

Plaintiff's ability to function in the domain of attending and completing tasks was also not markedly or extremely limited.  (Id.)  His mother's assertions that he has a low attention span, does not pay attention or follow directions, and is "hyper" was unpersuasive given (a) her report to his doctor that Plaintiff did "fine" as long as he was on the medication, (b) the school records indicating that he did not have a problem following directions or doing class work, and (c) Mrs. Cloud's assessment that he did not have any problems in that domain. (Id.)

Plaintiff was also not limited to such an extent in the domain of interacting and relating to others.  (Id.)  Again, his mother's testimony describing marked limitations was contradicted by school records, including teacher reports dated February and March 2007. (Id. at 21-22.)

There was no evidence of Plaintiff having any limitation in the domain of moving about and manipulating objects.  (Id. at 22.)  Although his mother testified that he wets his bed and reported several other problems, e.g., not bathing independently, she reported that he did other representative tasks, e.g., zipping zippers, hanging up clothes, and arriving at school on time.  (Id.)

Plaintiff was not markedly or extremely limited in the domain of health and physical well being, as evidenced by there being only one intervention by a physician for asthma. (Id.)

Accordingly, the ALJ concluded, Ms. Lett's testimony that Plaintiff was disabled within the meaning of the Act was not credible.  (Id.)  Plaintiff was not disabled.  (Id.)

**Legal Standards**

Title 42 U.S.C. § 1382c(3)(C)(i) provides that "[a]n individual under the age of 18 shall be considered to be disabled for purposes of [SSI] if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The Commissioner's decision denying a child SSI benefits is reviewed by this Court to determine whether it is supported by substantial evidence. **Rucker v. Apfel**, 141 F.3d 1256, 1259 (8th Cir. 1998); **Clark v. Apfel**, 141 F.3d 1253, 1255 (8th Cir. 1998); **Frankl v. Shalala**, 47 F.3d 935, 937 (8th Cir. 1995). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's decision.'" **England v. Astrue**, 490 F.3d 1017, 1019 (8th Cir. 2007) (quoting Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must also take into account whatever in the record fairly detracts from that decision. **Id.**; **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999); **Baker v. Apfel**, 159 F.3d 1140, 1144 (8th Cir. 1998). The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion. **Tate v. Apfel**, 167 F.3d 1191, 1196 (8th Cir. 1999); **Pyland v. Apfel**, 149 F.3d 873, 876 (8th Cir. 1998). See also **Reed v. Sullivan**, 988 F.2d 812, 815 (8th Cir. 1993) ("[T]he possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (internal quotations omitted)).

Under the Act, the ALJ inquires into (1) whether the child is currently engaged in substantial gainful activity; (2) whether the child suffers severe impairments or a combination of severe impairments; and (3) whether the child's impairments meet or equal any listed impairments. **Garrett ex rel. Moore v. Barnhart**, 366 F.3d 643, 647 (8th Cir. 2004); **Bryant v. Apfel**, 141 F.3d 1249, 1251 (8th Cir. 1998). If the ALJ finds at step two of the evaluation that a child's impairments are severe, as in the instant case, then the question at step three is whether those severe impairments cause "marked and severe functional limitations" in one of six domains and whether they meet the duration requirement of at least one year. 20 C.F.R. § 416.924(d). "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." Id. See also 20 C.F.R. § 416.924(a); 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B. "An impairment is functionally equivalent to a listing when the impairment results in an 'extreme' limitation in one domain of functioning or a 'marked' limitation in two domains of functioning." **England**, 490 F.3d at 1020 (citing 20 C.F.R. § 416.926a(a)). The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

**Discussion**

Plaintiff argues that the ALJ erred by not finding that he has extreme limitations in five of the domains.[18]

Before addressing this argument, the question of the relevant time period must be defined. The SSI[19] application was filed in August 2006[20] and alleged a disability onset date of August 1, 2006. Consequently, when examining Plaintiff's functioning, the focus is on the period on or after that date.

The first domain is acquiring and using information. In this domain, a child's ability to acquire and learn information and to use the information learned is considered. 20 C.F.R. § 416.926a(g). A child of Plaintiff's age "should be able to *learn* to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv) (emphasis added). At the relevant time, Plaintiff was in the third grade.[21] His third grade teacher, Ms. Cloud, reported that Plaintiff needed improvement in math and reading.[22] She also reported that he was not

---

[18]Plaintiff briefly also argues that he has extreme limitations in all six domains due to his ADHD, asthma, and bedwetting. He does not argue that any of these impairments satisfy a listing, however, and addresses the consequences of the impairments only as to five of the domains.

[19]Plaintiff mistakenly refers to an application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401-433, also having been filed. Only an SSI application was filed.

[20]In the conclusion of his supporting brief, Plaintiff refers to March 2004 as the date the application was filed. An application had been filed then, see note 1, supra, but it is the denial of his August 2006 application that is before the Court for judicial review.

[21]No school records after the third grade were before the ALJ.

[22]Social Security Ruling 06-03p considers teachers and other educational personnel as "non-medical sources" who may have close contact with claimants and who may be "valuable sources of evidence for assessing impairment severity and functioning." Social Security Ruling 06-03p, 2006 WL

- 18 -

receiving any special education services and was average in math and written language. She described him as an average student and opined that he did not have any problem in this domain. Her opinion was the same as the school librarian, the physical education teacher, and the music teacher. She saw Plaintiff for seven hours each school day. The librarian and other two teachers saw him for a total of at least three hundred minutes each week. The art teacher, however, thought Plaintiff had an obvious problem in six of the ten activities in this domain, a serious problem in two, and a very serious problem in one. She saw Plaintiff one hour a week and had taught him the previous year also. Clearly, the ALJ did not err in giving more weight to the assessment of Plaintiff's daily classroom teacher, who saw him seven hours every school day, than to the art teacher, who saw him less than the music teacher, who also found that Plaintiff had no problem in that domain.

Plaintiff also points to his poor grades in support of his argument. This argument is unavailing, however, because (a) the grades were earned before the relevant period and (b) it is Plaintiff's ability to learn, not whether he has, that is at issue.

Plaintiff next challenges the ALJ's finding that he did not have marked or extreme limitations in the area of attending and completing tasks. This domain requires a consideration of "how well [the child is] able to focus and maintain [his] attention, and how well [he] begin[s], carr[ies] through, and finish[es] [his] activities, including the pace at

---

2329939, *3 (S.S.A. 2006). Such sources often "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." Id.

which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). Attention "involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance." 20 C.F.R. § 416.926a(h)(1)(i).

Plaintiff was diagnosed with ADHD in December 2003. His next medical record, dated April 2005, indicates that he had not been taking his medication for ADHD because his mother wanted to see how he did when not taking it; his behavior was worse. The next month, he was back on the medication, but he was still being aggressive. In April 2006, four months before the alleged disability onset date, he was described as doing well. The same month as the alleged disability onset date, he was doing okay. Five months later, in January 2007, he was no longer taking an additional medication for his ADHD that had been prescribed the previous April. He was describing as having *a* temper flare-up. An impairment that is controllable by medication is not disabling. See **Schultz v. Astrue**, 479 F.3d 979, 983 (8th Cir. 2007). See also **Briggs v. Callahan**, 139 F.3d 606, 609 (8th Cir. 1998) (affirming ALJ's decision that child was not disabled when her hyperactivity was controlled by medication).

As in the previous domain, Plaintiff's classroom teacher during the relevant time reported that he had no limitation in this domain. His physical education and music teachers thought he had at worst a slight limitation. The only teacher to find a greater limitation was his art teacher. As discussed above, the ALJ did not err in giving greater weight to the report of a teacher who saw him seven hours a day than to the teacher who saw him one hour a week.

The next domain is interacting and relating with others. A child of Plaintiff's age "should be able to develop more lasting friendships with children who are [his] age[;] . . . should begin to understand how to work in groups to create projects and solve problems[;] . . .should have an increasing ability to understand another's point of view and to tolerate differences[;] . . . and should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

Plaintiff's classroom teacher found he had no limitation in this domain. Indeed, she reported that he had friends. She had also, however, reported that he liked to irritate his classmates and she had given him two behavior reports for arguing with a classmate and telling another boy to go to another school. The art teacher assessed Plaintiff as having problems in each of the twelve activities in this domain, with the depth of the problem ranging from obvious to very serious. She had to change Plaintiff's seat to be next to hers. On the other hand, the music teacher, who saw Plaintiff twice as often as the art teacher, had not had to implement any behavior modification strategies after Plaintiff had started taking his medication. The decision of the ALJ that Plaintiff did not have marked or extreme limitations is supported by the record.

In the domain of moving about and manipulating objects, Plaintiff's "developing gross motor skills should let [him] move at an efficient pace about [his] school, home, and neighborhood." 20 C.F.R. § 416.926a(j)(2)(iv). "[His] increasing strength and coordination should expand [his] ability to enjoy a variety of physical activities, such as running and

jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." Id. "[His] developing fine motor skills should enable [him] to do things like use many kitchen and household tools independently, use scissors, and write." Id. His classroom and music teachers and the school librarian reported that Plaintiff had no limitations in this domain. No complaint or concern was expressed by his mother to any doctor about his abilities in this domain.[23] And, his physical education teacher, who had the opportunity to observe Plaintiff's gross motor skills, strength, and coordination one hundred minutes each week (forty minutes longer each week than his art teacher), also reported that he had no limitations in this area.

The last domain challenged by Plaintiff is that of health and physical well being. See 20 C.F.R. § 416.926a(l) (outlining the relevant consideration of this domain). Other than behaviors that were properly addressed under one of the other four domains discussed above, Plaintiff cites his ADHD, asthma, and bedwetting. His ADHD is controlled by medication. Other than the diagnosis of asthma, there is no reference to any continuing associated problems. Nor is there any reference in the medical records during the relevant period to any concern with, complaint of, or treatment for bedwetting.

### Conclusion

---

[23]Plaintiff's mother did report that Plaintiff do such activities as bathing independently or buttoning buttons, she also reported that he zipped zippers and hung up clothes. Thus, her report also does not describe any marked limitations in this area.

For the reasons set forth above, the ALJ's decision that Plaintiff did not have an impairment that met or functionally or medically equaled an impairment of listing-level severity is supported by substantial evidence on the record as a whole. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is AFFIRMED and the case is DISMISSED.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of January, 2011.